# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JERALD EDWARD AVISE,<br><br>    Defendant. | No. CR05-3026-MWB<br><br>**REPORT AND RECOMMENDATION<br>ON MOTION TO SUPPRESS** |

_____

This matter is before the court on the defendant's motion to suppress (Doc. No. 26), filed March 24, 2006. The plaintiff (the "Government") resisted the motion on March 31, 2006. (Doc. No. 29) On April 13, 2006, the court held an evidentiary hearing on the motion at which Assistant U.S. Attorney Forde Fairchild appeared on behalf of the Government, and the defendant Jerald Edward Avise appeared in person with his attorney, Jim K. McGough. The Government offered the testimony of Erran Miller, a reserve officer with the Hampton, Iowa, Police Department; Adam Blau, a Franklin County, Iowa, Deputy Sheriff; and Ray Beltran, a Hampton police officer.

Avise moves to suppress all evidence flowing from his arrest on December 22, 2004. The following facts are relevant to consideration of his motion.

On December 22, 2004, at about 11:20 p.m., Officer Erran Miller was on routine patrol in his squad car in Hampton, Iowa. He stopped at a red light intending to proceed southbound. A Chevrolet Suburban was facing northbound at the light. Although the Suburban did not have its turn signal activated, it appeared to Officer Miller as though the driver intended to turn left, so when the light turned green, Officer Miller waited a moment to be sure the Suburban did not hit him. The Suburban swerved, as though the driver had intended to turn left but then had changed his mind, and proceeded straight in the northbound lane. The driver's actions caught Officer Miller's attention, and at 11:24

p.m., he ran the license plate on the Suburban. He learned the car was registered to a Todd Becker, whose driver's license was barred. Officer Miller drove around the block and stopped the Suburban at 11:27 p.m. He approached the vehicle and saw two people in the front seat, the male driver and a female passenger. He asked the driver for his driver's license, insurance verification, and registration. The driver produced a driver's license which identified him as the defendant Jerald Edward Avise. He also produced proof of insurance, but he said he had just purchased the vehicle and had not yet changed the registration. At 11:30 p.m., Officer Miller ran the driver's license, which came back valid. While he was talking briefly with Avise, Officer Miller observed that Avise was agitated and nervous and something about his eyes "didn't seem quite right." Officer Miller suspected Avise might be intoxicated, but he was not sure.

When Officer Miller made the initial call to check the Suburban's license plates, the call was overheard by Adam Blau, a Franklin County Deputy Sheriff, who was on patrol that evening. He was familiar with Todd Becker, the Suburban's registered owner, and knew him to be suspected of drug trafficking activities. Therefore, Deputy Blau decided to proceed to the scene of the traffic stop. Officer Ray Beltran of the Hampton Police Department also heard the call. He similarly was familiar with Todd Becker, and he also drove to the scene of the traffic stop, arriving shortly after Deputy Blau.

When Deputy Blau arrived at the scene, Officer Miller told him the names of the Suburban's occupants, and he stated Avise was not the vehicle's registered owner. Officer Miller told Deputy Blau he had stopped the Suburban because it was weaving in its lane, and he stated that he thought Avise might be intoxicated, but he was not sure. Officer Beltran also arrived at the scene, and Officer Miller turned the traffic stop over to Deputy Blau and Officer Beltran, as the more senior officers on the scene.

Deputy Blau asked Avise to come back and sit in Officer Miller's patrol car. Avise got into the passenger seat and Deputy Blau got into the driver's seat of the patrol car.

2

Deputy Blau intended to perform field sobriety tests on Avise. However, he testified that Avise's eyes are somewhat "bulgy" or "buggy" in shape, and he though Avise had a medical condition with his eyes that would prevent the officer from getting an accurate result from the sobriety tests involving eye movements. He further testified it was extremely cold outside, and out of courtesy to Avise, he decided not to ask Avise to get out of the vehicle to perform the walk-and-turn test or the one-leg-stand test. Instead, Deputy Blau talked with Avise, asking him some questions and observing his movements. He testified Avise was very jittery and animated in his gestures, he did not want to sit still, and he was always looking around. Deputy Blau testified he has dealt with individuals who are under the influence of methamphetamine, and he felt Avise was exhibiting similar gestures and actions. He asked Avise if he had been drinking and Avise said he had not; however, Avise stated he had been at a "party house" all day, where others were using drugs, and he might have some second-hand drugs in his system.

Deputy Blau got out of the squad car and told Officer Beltran he believed Avise was under the influence of drugs. In addition, Deputy Blau stated he detected the odor of marijuana about Avise. Officer Beltran got into the squad car and talked with Avise briefly. He got back out of the car and told Deputy Blau that he did not detect any marijuana odor, but he agreed that Avise was acting abnormally. Officer Beltran testified that at one point, he caught Avise's glance and noticed his eyes were bloodshot and watery. In addition, Officer Beltran stated Avise was mumbling unintelligibly to himself. Officer Beltran took Avise into custody, put Avise into the officer's own patrol car, and took Avise to the police station for further testing. Officer Beltran testified Avise was not formally placed under arrest and was not handcuffed at the time they left the scene.

When they arrived at the police station, Officer Beltran read a form to Avise which the officer described as an implied consent form that is read to anyone who is suspected of being under the influence of alcohol or other drugs. He stated Avise appeared to be

3

confused and was talking to himself with his head hanging down.  At one point, Avise stated he did not understand what the officer had just read to him.  Deputy Blau, who had arrived at the station by then, stepped in and explained to Avise what the implied consent form meant.  Deputy Blau testified he told Avise that if he signed the consent form and then failed to give a urine sample, it would be considered a refusal and he would automatically lose his driver's license.  Avise then marked a box on the form and signed the form, consenting to a urinalysis.  He was taken to a bathroom to give a urine sample, but was unable to urinate.  He then was taken to an interview room, where he consumed three or four glasses of water.  After two more failed attempts to give a urine sample, Officer Beltran and Deputy Blau concluded Avise was "just playing games," and they decided to cease their attempts to obtain a urine sample and to indicate Avise was unable to cooperate with the implied consent.

Officer Beltran booked Avise into the jail, and inventoried and logged in Avise's possessions, but he neglected to retrieve Avise's jacket.  When he was escorting Avise to his cell, the officer asked Avise to remove his jacket.  The officer testified it is jail policy to allow inmates to have only a pair of pants and a shirt.  Avise refused to surrender his jacket, and the officer ended up taking it from him by force.  After Avise was locked in his cell, Officer Beltran patted down Avise's jacket and felt something in an inside pocket.  He looked to see what was in the pocket, and retrieved a bundle of money and two plastic bags of suspected methamphetamine.  He later learned that an inventory search of the Suburban had yielded drugs, paraphernalia, and cash.

Based on the drugs found in Avise's coat and his car, a search warrant was obtained to search Avise's residence, where additional drugs, paraphernalia, cash, and firearms were located.

Avise moves to suppress all of the evidence flowing from the traffic stop.  He argues his detention at the scene of the traffic stop was improper because the officers had

no reasonable, articulable suspicion that criminal activity was afoot after he produced a valid driver's license. He further argues his vehicle was searched without a warrant and before he was placed under arrest; he was arrested as a result of the illegal search of his vehicle, and therefore his jacket was searched incident to an illegal arrest; and the search warrant was based on the fruits of the other illegal searches.

In the court's view, Avise's motion rises and falls on a single issue, to-wit: whether the officers had probable cause to support an arrest at the time they took Avise from the scene of the traffic stop. If the officers had probable cause to put Avise in the patrol car and take him from the scene of the stop, then everything following that action – including the inventory search of the vehicle, the search of Avise's jacket, and the search warrant based on evidence found in those searches – was proper.

Avise does not argue that Officer Miller stopped him improperly, but he argues he was detained improperly at the scene after he produced a valid driver's license. The record shows less than ten minutes had elapsed between the time Officer Miller first called in the Suburban's license plate and the time the other officers arrived at the scene. Within another ten to fifteen minutes, Avise was transported from the scene. It is well settled that if events transpire during a traffic stop that give rise to reasonable suspicion of criminal activity, an officer is justified in detaining a suspect beyond the time required to complete the initial traffic stop. *See United States v. Beck,* 140 F.3d 1129, 1136 (8th Cir. 1998) (Bennett, J., sitting by designation). The court must determine, in light of the totality of the circumstances, "[w]hether the particular facts known to the officer[s] amount[ed] to an objective and particularized basis for a reasonable suspicion of criminal activity." *Id.* (internal quotation marks, citations omitted).

During his brief conversation with Avise, Officer Miller determined that Avise did not have registration papers for the Suburban, and he thought Avise might be under the influence of something, although he was not sure. Other officers arrived, talked with

5

Avise, and concluded Avise was under the influence of something, in part because of his actions and in part because he had admitted to being in a place where drugs were being used. They decided to take Avise to the station for further sobriety testing. The court finds the length of Avise's detention at the scene of the traffic stop was not unreasonable in light of the facts known to the officers. Considering the totality of the circumstances, the officers had a reasonable basis for believing Avise was engaged in criminal activity.

The court further finds the officers had probable cause to make a warrantless arrest and to transport Avise from the scene for further testing. "To find probable cause to make a warrantless arrest, the facts and circumstances within the officers' knowledge must be sufficient to justify a reasonably prudent person's belief that the suspect has committed or is committing an offense." *United States v. Roberson*, 439 F.3d 934, 939 (8th Cir. 2006) (citing *United States v. Morgan*, 997 F.2d 433, 435 (8th Cir. 1993)). The court looks at the totality of the circumstances and gives "due weight to the inferences that can be drawn from the officers' experience" in its review of the officers' determination of probable cause. *Id.* (citing *United States v. Wilson*, 964 F.2d 807, 809 (8th Cir. 1992)). As already noted, the facts known to the officers at the scene amounted to an objective and particularized basis for their reasonable suspicion that Avise was under the influence of alcohol or some other substance that would cause him to be driving while impaired.

Having lawfully detained and arrested Avise, the officers then properly searched the Suburban incident to Avise's arrest, and they found drugs, paraphernalia, and other incriminating evidence. The discovery of incriminating evidence during an automobile search incident to arrest can form the basis for a warrant to search the suspect's residence. *United States v. Caswell*, 436 F.3d 894, 898-99 (8th Cir. 2006) (citing *United States v. Searcy*, 181 F.3d 975, 981 (8th Cir. 1999)).

For these reasons, the court finds Avise was properly detained at the scene, properly arrested, his car was searched incident to his lawful arrest, and the warrant was

founded upon probable cause based on the discovery of drugs and other evidence in the car and in Avise's jacket. The court further notes, however, that even if the warrant were found to be deficient, with the officers' knowledge of the facts surrounding the traffic stop and the evidence found in Avise's vehicle and jacket, no valid argument could be made that the officers lacked a good faith belief that the warrant was valid. *See United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

For these reasons, the court respectfully recommends Avise's motion to suppress be denied. Any party who objects to this report and recommendation must serve and file specific, written objections by **April 24, 2006.** Any response to the objections must be served and filed by **April 27, 2006.**

**IT IS SO ORDERED.**

**DATED** this 18th day of April, 2006.

_____
PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT