## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>JERALD EDWARD AVISE,<br><br>　　　　　Defendant. | No. CR05-3026-MWB<br><br>**ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTION TO SUPPRESS** |

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　*A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　*B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
　　*A. Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
　　*B. Objections To Report And Recommendation* . . . . . . . . . . . . . . . 8
　　　　1.　Basis To Expand Investigation . . . . . . . . . . . . . . . . . . . . 8
　　　　2.　Search Of Avise's Vehicle . . . . . . . . . . . . . . . . . . . . . . . 9

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On September 20, 2005, an indictment was returned against defendant Jerald Edward Avise, charging him with conspiracy to distribute and possess with intent to distribute 5 grams or more of pure methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846, possessing with intent to distribute 5 grams or more of pure methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), possession of firearms and ammunition in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A)i), and possession of firearms and ammunition by an unlawful user of a controlled substance, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).

Defendant Avise filed a motion to suppress. In his motion, defendant Avise seeks to suppress evidence seized following a traffic stop of the automobile in which he was driving. Defendant Avise contends that his detention at the scene of the traffic stop was improper because the officers had no reasonable, articulable suspicion that criminal activity was afoot after he produced a valid driver's license. He further argues his vehicle was searched without a warrant and before he was placed under arrest. He also asserts that he was arrested as a result of the illegal search of his vehicle, and therefore evidence seized in a search of his jacket, which was done following his arrest, must be suppressed as the fruits of the prior illegal searches. Defendant Avise's motion to suppress was referred to United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). Judge Zoss conducted an evidentiary hearing and then filed a Report and Recommendation in which he recommends that defendant Avise's motion to suppress be denied. Judge Zoss concluded that the length of Avise's detention at the scene of the traffic stop was not unreasonable in light of the facts known to the officers, and, considering the totality of the

2

circumstances, the officers had a reasonable basis for believing Avise was engaged in criminal activity. Judge Zoss also concluded that the officers had probable cause to make a warrantless arrest and to transport Avise from the scene for further testing. Judge Zoss further found that, having lawfully detained and arrested Avise, the officers properly searched Avise's vehicle incident to Avise's arrest, and the discovery of incriminating evidence found during the vehicle search incident to Avise's arrest formed the basis for probable cause for a search warrant to search Avise's residence.

Defendant Avise has filed objections to Judge Zoss's Amended Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Avise's motion to suppress.

### B. *Factual Background*

In his Amended Report and Recommendation, Judge Zoss made the following findings of fact:

> On December 22, 2004, at about 11:20 p.m., Officer Erran Miller was on routine patrol in his squad car in Hampton, Iowa. He stopped at a red light intending to proceed southbound. A Chevrolet Suburban was facing northbound at the light. Although the Suburban did not have its turn signal activated, it appeared to Officer Miller as though the driver intended to turn left, so when the light turned green, Officer Miller waited a moment to be sure the Suburban did not hit him. The Suburban swerved, as though the driver had intended to turn left but then had changed his mind, and proceeded straight in the northbound lane. The driver's actions caught Officer Miller's attention, and at 11:24 p.m., he ran the license plate on the Suburban. He learned the car was registered to a Todd Becker, whose driver's license was barred. Officer Miller drove around the block and stopped the Suburban at 11:27 p.m. He approached the vehicle and saw

two people in the front seat, the male driver and a female passenger. He asked the driver for his driver's license, insurance verification, and registration. The driver produced a driver's license which identified him as the defendant Jerald Edward Avise. He also produced proof of insurance, but he said he had just purchased the vehicle and had not yet changed the registration. At 11:30 p.m., Officer Miller ran the driver's license, which came back valid. While he was talking briefly with Avise, Officer Miller observed that Avise was agitated and nervous and something about his eyes "didn't seem quite right." Officer Miller suspected Avise might be intoxicated, but he was not sure.

When Officer Miller made the initial call to check the Suburban's license plates, the call was overheard by Adam Blau, a Franklin County Deputy Sheriff, who was on patrol that evening. He was familiar with Todd Becker, the Suburban's registered owner, and knew him to be suspected of drug trafficking activities. Therefore, Deputy Blau decided to proceed to the scene of the traffic stop. Officer Ray Beltran of the Hampton Police Department also heard the call. He similarly was familiar with Todd Becker, and he also drove to the scene of the traffic stop, arriving shortly after Deputy Blau.

When Deputy Blau arrived at the scene, Officer Miller told him the names of the Suburban's occupants, and he stated Avise was not the vehicle's registered owner. Officer Miller told Deputy Blau he had stopped the Suburban because it was weaving in its lane, and he stated that he thought Avise might be intoxicated, but he was not sure. Officer Beltran also arrived at the scene, and Officer Miller turned the traffic stop over to Deputy Blau and Officer Beltran, as the more senior officers on the scene.

Deputy Blau asked Avise to come back and sit in Officer Miller's patrol car. Avise got into the passenger seat and Deputy Blau got into the driver's seat of the patrol car. Deputy Blau intended to perform field sobriety tests on Avise. However, he testified that Avise's eyes are somewhat "bulgy"

or "buggy" in shape, and he though Avise had a medical condition with his eyes that would prevent the officer from getting an accurate result from the sobriety tests involving eye movements. He further testified it was extremely cold outside, and out of courtesy to Avise, he decided not to ask Avise to get out of the vehicle to perform the walk-and-turn test or the one-leg-stand test. Instead, Deputy Blau talked with Avise, asking him some questions and observing his movements. He testified Avise was very jittery and animated in his gestures, he did not want to sit still, and he was always looking around. Deputy Blau testified he has dealt with individuals who are under the influence of methamphetamine, and he felt Avise was exhibiting similar gestures and actions. He asked Avise if he had been drinking and Avise said he had not; however, Avise stated he had been at a "party house" all day, where others were using drugs, and he might have some second-hand drugs in his system.

Deputy Blau got out of the squad car and told Officer Beltran he believed Avise was under the influence of drugs. In addition, Deputy Blau stated he detected the odor of marijuana about Avise. Officer Beltran got into the squad car and talked with Avise briefly. He got back out of the car and told Deputy Blau that he did not detect any marijuana odor, but he agreed that Avise was acting abnormally. Officer Beltran testified that at one point, he caught Avise's glance and noticed his eyes were bloodshot and watery. In addition, Officer Beltran stated Avise was mumbling unintelligibly to himself. Officer Beltran took Avise into custody, put Avise into the officer's own patrol car, and took Avise to the police station for further testing. Officer Beltran testified Avise was not formally placed under arrest and was not handcuffed at the time they left the scene.

When they arrived at the police station, Officer Beltran read a form to Avise which the officer described as an implied consent form that is read to anyone who is suspected of being under the influence of alcohol or other drugs. He stated Avise appeared to be confused and was talking to himself with his

head hanging down. At one point, Avise stated he did not understand what the officer had just read to him. Deputy Blau, who had arrived at the station by then, stepped in and explained to Avise what the implied consent form meant. Deputy Blau testified he told Avise that if he signed the consent form and then failed to give a urine sample, it would be considered a refusal and he would automatically lose his driver's license. Avise then marked a box on the form and signed the form, consenting to a urinalysis. He was taken to a bathroom to give a urine sample, but was unable to urinate. He then was taken to an interview room, where he consumed three or four glasses of water. After two more failed attempts to give a urine sample, Officer Beltran and Deputy Blau concluded Avise was "just playing games," and they decided to cease their attempts to obtain a urine sample and to indicate Avise was unable to cooperate with the implied consent.

Officer Beltran booked Avise into the jail, and inventoried and logged in Avise's possessions, but he neglected to retrieve Avise's jacket. When he was escorting Avise to his cell, the officer asked Avise to remove his jacket. The officer testified it is jail policy to allow inmates to have only a pair of pants and a shirt. Avise refused to surrender his jacket, and the officer ended up taking it from him by force. After Avise was locked in his cell, Officer Beltran patted down Avise's jacket and felt something in an inside pocket. He looked to see what was in the pocket, and retrieved a bundle of money and two plastic bags of suspected methamphetamine. He later learned that an inventory search of the Suburban had yielded drugs, paraphernalia, and cash.

Based on the drugs found in Avise's coat and his car, a search warrant was obtained to search Avise's residence, where additional drugs, paraphernalia, cash, and firearms were located.

Amended Report and Recommendation at pp. 1-4. Upon review of the record, the court adopts all of Judge Zoss's factual findings that have not been objected to by defendant

6

Avise.

## II. LEGAL ANALYSIS

### A. *Standard Of Review*

Pursuant to statute, this court's standard of review for a magistrate judge's report and recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's report and recommendation on dispositive motions and prisoner petitions, where objections are made, as follows:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b).

The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied*, 519 U.S. 860 (1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir.

1994)); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk*). As noted above, defendant Avise has filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Avise's motion to suppress.

### *B. Objections To Report And Recommendation*
#### *1. Basis To Expand Investigation*

Defendant Avise objects to Judge Zoss's Report and Recommendation on the ground that he was improperly detained once the police determined that he had a valid driver's license.

The Eighth Circuit Court of Appeals has instructed that generally, when a law enforcement officer makes a traffic stop,

> The Fourth Amendment grants an officer conducting a routine traffic stop latitude to check the driver's identification and vehicle registration, ask the driver to step out of his vehicle and over to the patrol car, inquire into the driver's destination and purpose for the trip, and "undertake similar questioning of the vehicle's occupants to verify the information provided by the driver."

*United States v. Gregory*, 302 F.3d 805, 809 (8th Cir. 2002)(quoting *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002)). The scope of an investigation following a traffic stop may be expanded beyond these initial actions. As the Eighth Circuit Court of Appeals has explained:

> Whether an officer has reasonable suspicion to expand the scope of a traffic stop is determined by looking at "the totality of the circumstances, in light of the officer's experience." *United States v. Dodson,* 109 F.3d 486, 488 (8th Cir. 1997). Though each factor giving rise to suspicion might appear to be

> innocent when viewed alone, a combination of factors may warrant further investigation when viewed together. *United States v. Bloomfield,* 40 F.3d 910, 918 (8th Cir. 1994) (en banc). An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered. *See United States v. Morgan,* 270 F.3d 625, 631 (8th Cir. 2001); *[United States v.] Poulack,* 236 F.3d [932,] 936 [(8th Cir. 2001)]. *See also [United States v.] Barahona,* 990 F.2d [412,] 416 [(8th Cir. 1993)]  ("[I]f the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions.").

*Linkous*, 285 F.3d at 720.

Here, the officers were confronted by a driver displaying signs of being under the influence of methamphetamine and who admitted to the officers to having been at a house earlier where drugs were being used. Because Avise's responses to the officers' questions and physical condition gave rise to suspicions unrelated to the traffic offense, the officers were permitted to broaden their inquiry in order to satisfy those suspicions. *Gregory*, 302 F.3d at 809 (citing *United States v. Barahona*, 990 F.2d 412, 416 (8th Cir. 1993). Thus, the court concludes that Judge Zoss correctly found that because of the officers' reasonable suspicions unrelated to the traffic offense, the officers were entitled to broaden their inquiry to satisfy those suspicions. Therefore, this objection is denied.

### 2. *Search Of Avise's Vehicle*

Defendant Avise also objects to Judge Zoss's Report and Recommendation on the ground that the search of Avise's vehicle was illegal. Defendant Avise argues that he was not under arrest at the time his vehicle was searched and therefore the search was not a valid inventory search. Defendant Avise asserts that because the search of his vehicle was illegal, all evidence located as a result of the search must be suppressed as the fruit of the

9

illegal search.

The test for determining whether an individual is in custody or under arrest is whether, under the totality of the circumstances, the "suspect's freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (holding in context of when suspect is under arrest or in custody for purpose of *Miranda* warning); *Stansbury v. California*, 511 U.S. 318, 322-24 (1994) (a person is in custody if there has been a formal arrest or restraint on freedom of movement of the degree associated with formal arrest). In the present case, the record establishes that defendant Avise was arrested when he was transported in a police patrol car to the police station for the purposes of drug testing. Defendant Avise's freedom of movement was curtailed nearly identical with one under formal arrest. Indeed, the only item associated with formal arrest that was missing in this case was that defendant Avise was not handcuffed by the police. Moreover, it is clear that only after defendant Avise was under arrest and transported to the police station was his vehicle towed to a building and subjected to an inventory search incident to arrest. Therefore, this objection is also denied.

### III. CONCLUSION

Therefore, for the reasons set forth above, the court, upon a *de novo* review of the record, accepts Judge Zoss's Amended Report and Recommendation and **denies** defendant Avise's motion to suppress.

**IT IS SO ORDERED.**

**DATED** this 2nd day of May, 2006.

_Mark W. Bennett_
_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA
